**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| STRIKE 3 HOLDINGS, LLC, |
| Plaintiff, |
| v. |
| JOHN DOE, subscriber assigned IP address 173.79.157.163, |
| Defendant. |

Case No. 26-cv-2108-LLA-MJS

<u>**MEMORANDUM ORDER**</u>

Plaintiff Strike 3 Holdings LLC ("Strike 3") seeks leave to serve a third-party subpoena prior to a Rule 26(f) conference. Because Strike 3 seeks limited discovery that is both relevant and proportional to the needs of the case—namely, the identity of the allegedly infringing IP subscriber against whom Strike 3 seeks relief—the Court **GRANTS** the motion.

**BACKGROUND**

Strike 3 produces and distributes adult films. (ECF No. 1 ("Compl.") ¶¶ 2, 3.) Pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, it brings this lawsuit against a "John Doe" defendant who it alleges improperly downloaded and distributed thirty of its films. (*Id.* ¶¶ 4–6 & ECF No. 3-1, Ex. A.). Relying on its in-house infringement-detection tools, Strike 3 alleges that the "Defendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorent protocol." (*Id.* ¶¶ 27–28, 53); *see AF Holdings, LLC v. Does 1–1058*, 752 F.3d 990, 998 (D.C. Cir. 2014) (providing an overview of online piracy via BitTorrent). Through this case, it seeks to halt and remedy the alleged infringement.

As should be obvious, Strike 3 must identify the alleged infringer and name them in the lawsuit to proceed. But it has no identifying information except an IP address. (Compl. ¶¶ 5, 12.) Based on

1

that IP address, Strike 3 alleges to have used "geolocation technology … to determine that Defendant's IP address traced to a physical address" in D.C. (*Id.* ¶ 9.) Beyond that, though, Strike 3 says the subscriber's identity can be only ascertained through information from the user's Internet Service Provider ("ISP"), Verizon Fios. (*Id.* ¶ 5; *see* ECF No. 5 ("Pl.'s Mem.") at 2.) So Strike 3 wants to serve a Rule 45 third-party subpoena on Verizon Fios to discover John Doe's identity. (ECF No. 4.) Strike 3 posits that this "limited, immediate discovery" targeting Verizon Fios would allow Strike 3 to determine John Doe's "role in the infringement" and "effectuate service." (Pl.'s Mem. at 2.)

## LEGAL STANDARDS

Under the Federal Rules of Civil Procedure, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except ... when authorized ... by court order." Fed. R. Civ. P. 26(d)(1). "In cases involving as-yet-unknown defendants, in which the plaintiff cannot serve its complaint ... without obtaining identifying information from a third party," this means "'the only potential avenue for discovery is a court order under Rule 26(d)(1).'" *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1207 (D.C. Cir. 2020) (cleaned up) (quoting *AF Holdings*, 752 F.3d at 995). Two inquiries—relevance and proportionality—frame the Court's review. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and *proportional* to the needs of the case.") (emphases added).

## DISCUSSION

Because Strike 3's requested discovery is both relevant and proportional, its request is proper.

## I.   Strike 3's Requested Third-Party Discovery Is Relevant

First, the discovery Strike 3 seeks from the ISP is relevant. To move this suit forward, Strike 3 must identify the John Doe IP subscriber to effect service on them. But based on the information

currently available to Strike 3, John Doe exists to Strike 3 only as IP address 173.79.157.163, so the identity of the subscriber assigned to IP address 173.79.157.163 is plainly relevant.

The Court recognizes that the IP subscriber identified in response to the subpoena may not prove to be the alleged infringer. At this stage, though, Strike 3 need only demonstrate that "learning the subscriber's identity may help it identify the infringer." *Strike 3 Holdings, LLC v. Doe*, 2023 WL 1861077, at *3 (D.D.C. Feb. 9, 2023); *see also Strike 3 Holdings*, 964 F.3d at 1210 ("[T]he court is not asked to pass judgment on the strength of the plaintiff's allegations against the defendant, but to determine whether the plaintiff should have the opportunity to name that defendant in the first place."). Strike 3 carries that modest burden. Its submissions explain how its infringement-detection tools and geolocation technology tied this single IP address in D.C. to the two-and-a-half dozen allegations of infringement underlying its claims in the case. (Pl.'s Mem. at 2; ECF No. 1 ¶ 9); *see Strike 3 Holdings*, 964 F.3d at 1210 ("Based on these allegations, a court could reasonably infer that someone with prolonged, continuous access to this IP address was responsible for the alleged infringement. Viewing the allegations in the light most favorable to Strike 3, we think it at least plausible that the registered IP address subscriber actually did the infringing.") (citation omitted).

"Relevancy also requires a 'threshold showing' that the court will have personal jurisdiction over the unknown Defendant." *Strike 3 Holdings, LLC v. Doe*, 2023 WL 4581650, at *3 (D.D.C. July 18, 2023) (quoting *AF Holdings*, 752 F.3d at 995).[1] The Copyright Act "does not provide for the exercise of personal jurisdiction over alleged infringers on any basis," so Strike 3 must rely on "on the reach of District of Columbia law." *Malibu Media LLC v. Doe*, 177 F. Supp. 3d 554, 556 (D.D.C. 2016); *see also* Fed. R. Civ. P. 4(k)(1)(A). In similar cases, courts have generally exercised personal

---

[1] "Absent such a threshold showing, there is little reason to believe that the information sought will be relevant" because "[t]he identity of prospective defendants who cannot properly be sued in this district can be of little use in a lawsuit brought in this district." *AF Holdings*, 752 F.3d at 995 (quoting Fed. R. Civ. P. 26(b)).

jurisdiction "over a defendant who is a 'resident[] of the District of Columbia or at least downloaded the copyrighted work in the District.'" *Strike 3 Holdings, LLC v. Doe*, 2024 WL 3638346, at *2 (D.D.C. Aug. 2, 2024) (quoting *AF Holdings*, 752 F.3d at 996); *see also* D.C. Code §§ 13-422, 13-423(a)(3). And the D.C. Circuit has endorsed the use of "geolocation services" as a reliable means to "estimate the location of Internet users based on their IP addresses." *AF Holdings*, 752 F.3d at 996; *Strike 3 Holdings*, 964 F.3d at 1211. Accordingly, because Strike 3's geolocation analysis pinpoints the allegedly infringing activity within D.C., it satisfies this personal-jurisdiction element, too.

## II.    Strike 3's Requested Third-Party Discovery Is Proportional

Strike 3's requested discovery is also "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Several factors bear on this piece of the analysis, including "the importance of the issues at stake in the action, the amount in controversy, the parties' access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "No single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional, and all proportionality determinations must be made on a case-by-case basis." *Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017) (cleaned up).

Here, Strike 3 stresses the "importance" of the requested discovery and its inability to "access" the information in any other way. (Pl.'s Mem. at 6–8.) For starters, Strike 3 rightly points out that the case cannot move forward at all unless and until Strike 3 confirms the identity of the IP subscriber, which makes the requested information "crucial" to the case. *See Strike 3*, 964 F.3d at 1207 ("Such an order is 'the only potential avenue for discovery' in cases in which information from a third party is necessary to identify potential defendants." (quoting *AF Holdings*, 752 F.3d at 995)); 47 U.S.C. § 551(c)(2)(B). More, Strike 3 rightly emphasizes the dynamic of "information asymmetry." The ISP

4

possesses information about the IP subscriber's identity and holds the only key to unlocking those details. *See, e.g.*, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 299 (4th Cir. 2018) ("Only the ISP can match the IP address to the subscriber's identity").[2] These considerations, the Court agrees, reflect the proportionality of Strike 3's requested subpoena.

Strike 3 does not otherwise discuss the remaining Rule 26(b)(1) proportionality factors, but they likewise tilt in favor of allowing the discovery, as other cases have recognized. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, 2024 WL 3638347, at *3–4 (D.D.C. Aug. 2, 2024) (finding that remaining Rule 26(b)(1) factors tilt in favor of allowing subpoenas like the one sought here, including the not insignificant amount in controversy associated with many of these infringement claims, the relatively minimal burden on the ISP in identifying and providing the information, and so on); *Strike 3 Holdings, LLC v. Doe*, 2023 WL 6847017, at *4–5 (D.D.C. Oct. 17, 2023) (similar).

## III.    Entry of a Protective Order Is Premature

Finally, Strike 3 encourages the Court to enter a protective order for the benefit of the IP subscriber, "should the Court find it appropriate." (Pl.'s Mem. at 11.) The Court agrees that a protective order may become appropriate at some point, especially considering the arguably sensitive and embarrassing nature of the subject matter of the case. *See, e.g.*, *Strike 3 Holdings*, 2024 WL 3638346, at *4 (collecting cases entering protective orders in similar cases involving alleged infringement of adult films). But the Court declines to enter such an order *sua sponte* at this juncture. Instead, if and when the IP subscriber is identified, they will be better suited to request a protective order on more concrete and specific terms, should they wish. To preserve the IP subscriber's ability to seek a protective order

---

[2] An ISP is generally prohibited from disclosing "personal identifiable information" without the subscriber's consent, except under limited circumstances, including "pursuant to a court order … if the subscriber is notified of such order by the person to whom the order is directed." 47 U.S.C. § 551(c)(1), (c)(2)(B).

once they become aware of this suit, though, the Court will tailor its Order to restrict the public disclosure of the IP subscriber's name and address for a limited period, as explained below.

## CONCLUSION AND ORDER

For the foregoing reasons, Strike 3's Motion for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference (ECF No. 4) is **GRANTED**. It is hereby **ORDERED** that:

1. Plaintiff may proceed with immediate discovery on the identified ISP, Verizon Fios, by serving a subpoena under Rule 45 that seeks information sufficient to identify Defendant, which may include Defendant's name, address, telephone number, and email address;

2. Plaintiff shall provide the ISP with a copy of this Memorandum Order when it serves its subpoena;

3. If and when the ISP is served with the subpoena, the ISP shall then provide the Defendant with a copy of this Memorandum Order at least ten (10) business days prior to releasing Defendant's identifying information to Plaintiff;

4. If the ISP or Defendant wishes to move to quash the subpoena, any such motion must be filed before the return date of the subpoena, which shall be no earlier than thirty (30) days from the date of service;

5. The ISP shall preserve any information sought in the subpoena pending the resolution of any timely motion to quash that may be filed;

6. Plaintiff shall refrain from identifying Defendant's name on the public docket for a period of thirty (30) days after receiving the subscriber's identifying information from the ISP; and

7. Any information disclosed to Plaintiff in response to a Rule 45 subpoena may be used by Plaintiff solely for the purpose of pursuing the claim(s) in its Complaint.

Separately, the Court **ORDERS** that within no later than thirty (30) days, Plaintiff shall file a status report summarizing its progress in working through these steps.

**SO ORDERED**.

Dated: July 10, 2026

MATTHEW J. SHARBAUGH
United States Magistrate Judge